Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7095 | **DATE** | September 18, 2001 |
| **CASE TITLE** | *Sherry Mehringer v. Village of Bloomingdale* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth in the attached Memorandum and Order, Defendant Bloomingdale's Motion to Dismiss [3-1] is DENIED with respect to Counts I and II of the Plaintiff Mehringer's Complaint and GRANTED with respect to Count III. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | SEP 19 2001 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | FILED FOR DOCKETING | |
| | Mail AO 450 form. | 01 SEP 18 PM 3:50 | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| RTS | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHERRY MEHRINGER, ) | |
| ) | |
| Plaintiff, ) | Hon. Blanche M. Manning |
| ) | |
| v. ) | 00 C 7095 |
| ) | |
| VILLAGE OF BLOOMINGDALE ) | DOCKETED |
| ) | SEP 1 9 2001 |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Sherry Mehringer brought this action against Defendant Village of Bloomingdale ("Bloomingdale") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. (Counts I and II), alleging hostile environment sexual harassment and retaliation, and breach of contract under state law (Count III). The instant matter comes before this Court on Bloomingdale's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Motion to Dismiss with respect to Counts I and II is DENIED and GRANTED with respect to Count III.

## BACKGROUND[1]

Mehringer worked as an engineering secretary for Bloomingdale from July 1988 to March 10, 2000, and performed her job in accordance to the expectations of her employer throughout

---

[1] The facts set forth in the Background section are taken from Mehringer's Complaint, and from Bloomingdale's sexual harassment policy, which Bloomingdale attached to its Motion to Dismiss. Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claims. Venture Assocs. Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993).

that period. Bloomingdale has a written policy prohibiting sexual harassment, which Mehringer received before she started working. This policy states "all allegations of [sexual harassment] will be thoroughly investigated, promptly and as confidentially as possible." Employees are instructed to report any perceived sexual harassment to their department head, who "shall promptly, but thoroughly, investigate the complaint," and "shall immediately notify the Village Administrator in a confidential manner." Within ten working days of receiving the employee's complaint, the department head is required to complete an investigation and make a written reply to the employee.

During Mehringer's employment, a male co-employee allegedly subjected her to unwelcome and frequent sexual advances, offensive conduct, and inappropriate gestures and comments. This conduct interfered with Mehringer's work performance and caused her severe mental and emotional distress, physical harm, embarrassment, and humiliation. Despite Mehringer's numerous complaints and reports to management about this conduct, Bloomingdale did not conduct an investigation. Further, supervisors and employees at Bloomingdale subjected Mehringer to "differential treatment" and added to her hostile surroundings after she made these complaints. Mehringer left her position on March 10, 2000 because she was unable to endure the male employee's continuing harassment, and because Bloomingdale had not responded to her repeated complaints.

Upon leaving her position, Mehringer filed an EEOC complaint. After receiving a right to sue letter, Mehringer filed the instant action alleging hostile environment sexual harassment (Count I) and retaliation (Count II) in violation of Title VII, and breach of contract (Count III) on the theory that Bloomingdale's sexual harassment policy created a contractual obligation. In

2

response, Bloomingdale has filed the instant Motion to Dismiss all three counts of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**STANDARD OF REVIEW**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all well-pled allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. Antonelli v. Sheehan, 81 F.3d 1422, 1427 (7th Cir. 1996). Dismissal is only proper where it is clear that no relief could be granted under any set of facts proven consistent with the allegations. Conley v Gibson, 355 U.S. 41, 45-6, 78 S. Ct. 99, 102 (1957). A motion to dismiss does not test whether the plaintiff will prevail on the merits but instead on whether she has properly stated a claim. Scheur v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974). However, the complaint must state either direct or inferential allegations concerning all material elements necessary to recover under the chosen legal theory. Glatt v. Chicago Park Dist., 847 F. Supp. 101, 103 (N.D. Ill. 1994).

**ANALYSIS**

Bloomingdale has moved for dismissal on all counts of Mehringer's Complaint. The Court will address each count in turn.

**I.  Hostile Environment Sexual Harassment**

Title VII provides that it is unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment that is so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive work environment violates Title VII. Parkins v. Civil Constructors of Illinois, Inc., 163

3

F.3d 1027, 1032 (7th Cir. 1998). To establish a prima facie case of hostile environment sexual harassment, the plaintiff must show that: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile, or offensive working environment that seriously affected the psychological well-being of the plaintiff; and (4) there is a basis for employer liability. Id.

In determining whether the conduct created a hostile environment, courts must consider its frequency, severity, whether it was physically threatening or humiliating, and whether it created an abusive working environment. Silk v. City of Chicago, 194 F.3d 788, 804 (7th Cir. 1999). The plaintiff must show that she experienced harassment based on her gender that was so hostile, intimidating, or degrading that it adversely affected her working conditions. Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997). To be actionable, the behavior must be both objectively and subjectively offensive, meaning that a reasonable person would find it hostile or offensive, and that the individual employee found it offensive. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Sexual assaults, other physical contacts for which there is no consent, uninvited sexual solicitations, intimidating words or acts, obscene language or gestures, and pornographic pictures all meet the objective standard Hostetler v. Quality Dining Inc., 218 F.3d 798, 807 (7th Cir. 2000). However, isolated or occasional inappropriate comments or vulgar remarks, or a workplace that is merely unpleasant are insufficient to establish an objectively offensive environment. See Spearman v. Ford Motor Co., 231 F.3d 1080, 1086 (7th Cir. 2000); Silk, 194 F.3d at 804-5; Perry, 126 F.3d at 1013.

4

Even if it is proven that a hostile or offensive environment existed, a basis for employer liability must also be established. Parkins, 163 F.3d at 1032. The standard for establishing this basis depends upon whether the harasser is the victim's supervisor or merely a co-employee. Id. To establish employer liability where the harasser is a co-employee, it is necessary to show that the employer was negligent in either discovering or remedying the harassment. Mason v. S. Illinois Univ. at Carbondale, 233 F.3d 1036, 1043 (7th Cir. 2000). The employer has a legal duty to take reasonable steps to rectify any sexual harassment by a co-employee. Parkins, 163 F.3d at 1032. The employer, however, is only required to rectify harassment of which it had knowledge or notice. Id. at 1035. If the victim never reported the harassment to the employer, that employer cannot be held liable. Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 447 (7th Cir. 1994).

Here, Bloomingdale argues that the Complaint fails to set forth sufficient factual allegations to show the harassment was severe enough to change Mehringer's working conditions. The Complaint, however, alleges that Mehringer experienced harassment based on sex in the form of frequent unwelcome sexual advances, offensive conduct, and inappropriate gestures and comments made by a male co-employee. This harassment allegedly changed her working conditions by causing her severe mental and emotional distress, physical harm, embarrassment, and humiliation in the workplace. Applying the objective standard discussed above, this Court finds that this conduct, if proven, is sufficient to create an objectively offensive work environment. The Court also finds that the alleged conduct was subjectively considered offensive by Mehringer. Bloomingdale had notice of the harassment through Mehringer's

repeated complaints, but failed to take reasonable steps to rectify or even investigate the conduct.[2]

Consequently, this Court denies the Motion to Dismiss with respect to Count I.

## II. Retaliation

Title VII also provides that it is unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). To plead a claim of retaliation, a plaintiff must allege that: (1) she complained about conduct that is prohibited by Title VII; (2) she suffered an adverse employment action; and (3) the adverse employment action was caused by her opposition to the unlawful employment practice. Spearman, 231 F.3d at 1086.

Courts broadly define the term "adverse employment action" because there are many different actions that employers might use to retaliate against employees. See Oest v. Illinois Dept. of Corrections, 240 F.3d 605, 612-3 (7th Cir. 2001); Place v. Abbott Labs., Inc., 215 F.3d 803, 810 (7th Cir. 2000); Knox v. Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996); Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). However, the action must be one that materially alters the terms and conditions of employment, rather than an essentially neutral action. Silk, 194 F.3d at 804; Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 273-4 (7th Cir. 1996).

Materially adverse employment actions are not limited to changes in pay or monetary

---

[2] Bloomingdale also contends that the Complaint does not sufficiently put them on notice of Mehringer's allegations. However, the Complaint is only required to give notice of what the legal claim against Defendant is and the grounds upon which it rests. See Fed. R. Civ. P. 8(a); Leatherman v. Tarrant Co. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160 (1993). Consequently, this Court finds that Mehringer has met the notice pleading requirements.

6

benefits, they can also be established by other types of changes in employment conditions. Smart, 89 F.3d at 441. For example, significantly reduced job responsibilities, or elimination of privileges normally associated with the position such as an office or telephone can also establish material adverse employment actions. See Dahm v Flynn, 60 F.3d 253, 257 (7th Cir. 1994); Collins v. State of Illinois, 830 F.2d 692, 703 (7th Cir. 1987). Differential treatment of the complaining employee constitutes an adverse employment action because it materially alters the employee's working conditions. Utomi v. Cook County, 1999 WL 787480, at *4 (N.D. Ill. Sept. 24, 1999). Differential treatment is not materially adverse, however, where it has little or no effect on the employee's job. Sweeney, 149 F.3d at 556. To establish a materially adverse change, the action must be more disruptive than mere inconveniences or minor alterations of job responsibilities. Krause v. City of LaCrosse, 246 F.3d 995, 1001 (7th Cir. 2001).

In contrast, neutral actions, such as a lateral transfer to a similar position in the company or a change in job title that involves no change in duties, do not constitute materially adverse changes. See Crady v. Liberty National Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993); Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, the changes must have an effect on employment conditions, not just a personal effect on the employee. Sweeney v. West, Secretary, Dept. of the Army, 149 F.3d 550, 556 (7th Cir. 1998). For example, simply causing the employee to experience humiliation or a bruised ego does not constitute an adverse change in employment conditions. Smart, 89 F.3d at 441.

Even if it is proven that an adverse employment action occurred, it is also necessary to establish that the employee's complaints about illegal conduct caused that action. Russell v Bd. of Trustees of the Univ. of Illinois at Chicago, 243 F.3d 336, 344 (7th Cir. 2001). Differential

treatment of the employee does not establish retaliation if it is not causally linked to the employee's complaints. Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1310 (7th Cir. 1997). The occurrence of an adverse employment action shortly after the employee makes a complaint supports an inference of causation. See Sweeney, 149 F.3d at 557; Alexander v. Gerhardt Enters., Inc., 40 F.3d 187, 196 (7th Cir. 1994).

In the instant case, Bloomingdale argues that the Complaint fails to allege any facts from which it can be inferred that an adverse employment action occurred. The Complaint, however, alleges that Mehringer made complaints to supervisors at Bloomingdale about conduct prohibited by Title VII. After making these complaints, she was allegedly subjected to "differential treatment" by supervisors and employees, which added to the hostile environment she was already experiencing. This treatment did not take place until after she made the protected complaints. Construing such allegations liberally and drawing all reasonable inferences in Mehringer's favor, as this Court is required to do, the Court finds that she has properly alleged a claim of retaliation. While Mehringer may ultimately need to allege more specific facts to succeed on her claim, dismissal at this stage would only be proper if it were clear that she could prove no set of facts consistent with the Complaint.

Consequently, this Court denies the Motion to Dismiss with respect to Count II of the Complaint.

### III. Breach of Contract

Mehringer also alleges that the sexual harassment policy in her employee manual is an employment contract, and that Bloomingdale breached it by failing to investigate her numerous harassment complaints. Under Illinois law, to plead a breach of contract claim based on an

8

employment manual, the employee must allege that: (1) the language of the manual created a clear promise that can be reasonably construed as an offer; (2) the manual was disseminated to the employee in such a manner that the employee is appraised of its contents and believes it to be an offer; and (3) the offer was accepted by starting or continuing work after learning of the manual's existence. Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 505 N.E.2d 314, 318 (Ill. 1987). However, even when all three elements are present, a disclaimer within the manual can negate contractual obligations created by the manual. Id. at 319.

The manual must contain language that clearly indicates a promise is being made, such as "must" or "will." Wooten v. Fortune Brands Inc., 1999 WL 705763, at *4 (N.D. Ill. Aug. 27, 1999). There must be a promise that certain specific provisions will govern the employment. Duldulao, 505 N.E.2d at 318-19. Specific disciplinary procedures or a definitive list of grounds for termination can establish such a promise. Wheeler v. Phoenix Co. of Chicago, 658 N.E.2d 532, 535 (Ill. App. Ct. 1995). However, more general statements requiring an employee to meet undefined standards of conduct or work performance do not establish a clear promise. Semerau v. The Village of Schiller Park, 569 N.E.2d 183, 184 (Ill. App. Ct. 1991). Further, the promise must give the employer a duty it is not already legally obliged to perform. Svigos v. Petry Television, Inc., 1996 WL 388416, at *3 (N.D. Ill. July 9, 1996).

A sexual harassment policy that merely summarizes the employer's existing duty under the law without making any offer to investigate complaints or discipline violators does not constitute a clear promise. Id. at *3. Moreover, even if a clear promise exists, a conspicuous disclaimer of contractual obligations can negate the employer's duty. Wheeler, 658 N.E.2d at 536. A conspicuous disclaimer is one that is clearly distinguished from the rest of the manual's

text or has been signed by the employee. See Chesnick v. Saint Mary of Nazareth Hosp. Ctr., 570 N.E.2d 545, 548 (Ill. App. Ct. 1991); Perman v. Arcventures, Inc., 554 N.E.2d 982, 987 (Ill. App. Ct. 1990).

In addition to a contractual obligation that has not been disclaimed, it is also necessary to establish that the employment manual created a tangible property right. Finnane v. Pentel of America, Ltd., 43 F. Supp. 2d 891, 901 (N.D. Ill. 1999). The right created must be a tangible employment benefit such as sick pay or disability benefits. Svigos, 1996 WL 388416, at *4. A promise to provide the employee with certain working conditions does not create a tangible benefit.[3] Wexler v. Knudsen Corp., 2000 WL 1720344, at *6 (N.D. Ill. Nov. 15, 2000). For example, employment policies that promise the intangible benefit of a work environment free from sexual harassment do not create an enforceable contract right. See Wexler, 2000 WL 1720344, at *6; Finnane, 43 F. Supp. 2d at 901. Similarly, a promise to investigate complaints of sexual harassment made by employees does not create an enforceable right. Svigos, 1996 WL 388416, at *4.

Here, Mehringer alleges that the sexual harassment policy created a contractual obligation. The policy contains clear language that can be construed as a promise by Bloomingdale to follow specific harassment investigation and reporting procedures. Bloomingdale promises to promptly and thoroughly investigate all complaints, and to provide written results of such investigations to the employee within ten days. This is a promise to

---

[3] Although one Illinois Appellate Court held that a promise to maintain an intangible working condition created an actionable contract right, this case has not been followed by other courts. See Corluka v. Bridgford Foods of Ill., 671 N.E.2d 814, 819 (Ill. App. Ct. 1996).

10

perform beyond the duties imposed on Bloomingdale by Title VII. The harassment policy was communicated to Mehringer before she began working for Bloomingdale, and she relied on it as an offer to maintain a harassment free work environment. Mehringer accepted this offer by starting to work after receiving the policy. Furthermore, the manual does not appear to contain a disclaimer of any contractual obligations it may create. However, as Bloomingdale correctly argues, this policy does not create a tangible employment benefit because a promise to investigate complaints of sexual harassment made by employees does not create an enforceable right. Svigos, 1996 WL 388416, at *4. Therefore, Bloomingdale's policy was merely a promise to maintain certain intangible working conditions which is not actionable under a theory of breach of contract. Consequently, this Court grants the Motion to Dismiss with respect to Count III.

## CONCLUSION

For the foregoing reasons, Defendant Bloomingdale's Motion to Dismiss [3-1] is DENIED with respect to Counts I and II of the Plaintiff Mehringer's Complaint and GRANTED with respect to Count III. It is so ordered.

ENTER:

*Blanche M. Manning*
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: SEP 18 2001